IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-08-438 |
| | § | |
| JAMES LaRUE HARRIS | § | |

**MEMORANDUM AND ORDER**

This criminal prosecution is before the Court on Defendant James LaRue Harris's Motion to Suppress [Doc. # 16] ("Motion"), seeking to suppress evidence that Fort Bend County Sheriff's Department and Katy Police Department officers seized from Defendant's bedroom on March 31, 2008. The Government filed a Response [Doc. # 17] in opposition to the Motion, and Defendant filed a pre-hearing Memorandum [Doc. # 25] in support of the Motion. The Court held a hearing on February 11, 2010, after which Defendant filed a Post-Suppression Hearing Memorandum and Supplemental Motion to Suppress [Doc. # 28]. Having carefully considered the parties' written submissions and oral argument, the evidence introduced at the hearing, and pertinent legal authority, the Court **denies** the Motion.

**I.    FACTS**

The Government presented two witnesses, Fort Bend County Sheriff's Department Detective Keith Carter and Katy Police Department Officer Timothy

Pawlak. The Court credits the testimony of the officers, to the extent they had a recollection of the events in issue.

The Court makes the following findings of fact.[1] On March 31, 2008, Detective Carter was working in the fugitive apprehension unit and was assigned to execute an arrest warrant for Defendant. Prior to going to Defendant's house to execute the arrest warrant, Detective Carter conducted research into Defendant's criminal history. *See* Warrant Service Record, Government Exh. 2. During that research, Detective Carter learned that Defendant was a convicted felon.

Detective Carter drove by Defendant's house and noticed several people and vehicles in the driveway. Detective Carter requested assistance from the Katy Police Department, and Officer Pawlak was assigned to assist Detective Carter. Officer Pawlak met with Detective Carter down the street from Defendant's house. Officer Pawlak advised Detective Carter that he knew Defendant, and he knew Defendant had been arrested several times and had been convicted of narcotics charges. Officer Pawlak knew that Defendant was a convicted felon.

---

[1] To the extent a finding of fact is more properly characterized as a conclusion of law, it should be deemed so. To the extent a conclusion of law is more properly characterized as a finding of fact, it should be so construed.

Detective Carter and Officer Pawlak approached Defendant's house, identified themselves, and advised Defendant they were there to execute an arrest warrant.[2] Defendant was wearing only pajama pants and, at the request of Defendant or his wife, the officers allowed him to reenter the house to change into appropriate clothes before being transported to jail. Detective Carter clearly advised Defendant that he was under arrest and that the officers would need to accompany him into the house.

The officers accompanied Defendant into his bedroom. Almost immediately, the officers noticed a handgun on the bed. Officer Pawlak also noticed a large gun cabinet in the bedroom with a glass front and long guns – either rifles or shotguns – inside. Knowing that Defendant was a convicted felon, the officers were aware at that point that the firearms were evidence of a crime.

After Defendant changed clothes, Detective Carter and Defendant left the house. Defendant was handcuffed and placed in a police car.

Officer Pawlak remained in Defendant's bedroom. He contacted his police dispatcher to see if the handgun was stolen. He also requested that additional officers

---

[2] From the time the officers arrived at Defendant's house, the entire encounter was recorded. The video recording shows only the outside of Defendant's house because it is recorded from a camera in Officer Pawlak's vehicle. The audio recording reflects the conversations inside the house because it was recorded from a microphone in Officer Pawlak's possession.

be dispatched to the crime scene to help secure and process the firearms.[3]  At that time, there were at least two adult females, an adult male, and a child present inside and just outside the house.

Defendant's wife, Artricia Harris, told Officer Pawlak that the firearms were Defendant's and that Defendant collects guns.  It was later determined that some of the firearms were loaded.

## II.   ANALYSIS

### A.   Firearms on Bed and In Gun Cabinet

The United States asserts that seizure of the firearms from Defendant's bed and gun cabinet was justified under the "plain view" doctrine.  "The plain view doctrine will justify such a seizure if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

---

[3]   Two officers from the Katy Police Department arrived shortly after Officer Pawlak requested assistance.  These two officers, together with Officer Pawlak, conducted a search of the house and found drugs, drug paraphernalia, and additional weapons not charged in the Indictment in this case.

Defendant concedes that the officers were legally entitled to accompany him into his bedroom.  Indeed, it is clearly established that officers may lawfully enter a home without a search warrant in order for the Defendant to obtain proper clothing before being taken to jail.  *See United States v. Wilson*, 306 F.3d 231 (5th Cir. 2002) (holding that the need to get clothes for a suspect can constitute exigent circumstances permitting a warrantless entry into the suspect's home or room).  The Court finds that the gun on the bed and the guns in the gun cabinet were in plain view and were observed almost immediately after the officers entered Defendant's bedroom.

Defendant argues that the firearms should be suppressed because the officers did not know Defendant was a convicted felon and, therefore, the incriminating nature of the items was not immediately apparent.  "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband."  *Waldrop,* 404 F.3d at 369.  The Court finds that the two officers knew at the time they entered Defendant's bedroom that he was a convicted felon.  Detective Carter learned of Defendant's prior felony conviction when he researched Defendant's criminal history prior to executing the arrest warrant.  Officer Pawlak already knew Defendant before March 31, 2008, and

he knew that Defendant had been arrested previously and convicted of drug-related felonies.[4]

The third element of the plain view doctrine requires that the law enforcement officer have been in a position to lawfully secure access to the evidence. *See United States v. Santiago*, 410 F.3d 193, 201 (5th Cir. 2005). This factor is implicated most often in situations such as where an officer observes an object through a window of a house or through the use of aerial photography. *Id.* The third prong has much less importance where, as here, the evidence is located in a place where the officers have a lawful right to be and that is easily accessible to them from that place. *See id.*

Because the United States has established all three elements of the plain view doctrine, the Motion to Suppress the firearms is denied.

### B.    Drugs and Post-Arrest Statements

Defendant asks this Court to suppress evidence of the drugs found in his house and to suppress any post-arrest statements he may have made. The Indictment in this case does not contain any drug-related charges against Defendant. Defendant has not identified any statements he made after he was arrested.[5] Indeed, Defendant concedes

---

[4]    Officer Pawlak also was briefed by Detective Carter before they executed the arrest warrant.

[5]    The Court recalls Defendant stating that he had been arrested 23 times, but the statement was volunteered by Defendant in connection with a conversation regarding bonding companies, not in response to any questions posed by either officer.

there is no evidence he responded to questions about whether the firearm was loaded and to whom the firearms belonged.

Any opinion regarding whether evidence that is not relevant to this case should be suppressed, or whether any unidentified statements which *may* have been made should be suppressed as obtained in violation of Defendant's Fifth Amendment rights, would be purely advisory. "Because federal courts may only hear cases or controversies under Article III, it is unconstitutional for the Court to issue mere advisory opinions." *Lawson v. Berkebile*, 308 F. App'x 750, 752 (5th Cir. Jan. 26, 2009) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 368 n.5 (5th Cir. 1995)).

The Motion to Suppress evidence of drug violations and the Supplemental Motion to Suppress any post-arrest statements Defendant may have made are denied. Should the Government obtain a superseding indictment that contains drug-related charges, or should the Government attempt to introduce post-arrest statements by Defendant, the Court will revisit the issue at that time.

### III.   CONCLUSION AND ORDER

The officers lawfully accompanied Defendant into his house and bedroom in order for Defendant to change into proper clothing before being taken to jail. Upon entering Defendant's bedroom, the officers observed in plain view a pistol on the bed

and several guns in a glass-front gun cabinet. Knowing that Defendant was a convicted felon, the officers were lawfully permitted to secure and seize the firearms as evidence of a crime.

The drug-related evidence is not relevant to the firearm charge in this case. Defendant has not identified any post-arrest statements, seeking instead a ruling that any statements he *may* have made should be suppressed as obtained in violation of his Constitutional rights. A ruling on these issues would be purely advisory. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Suppress [Doc. # 16] and the Supplemental Motion to Suppress [Doc. # 28] are **DENIED**.

Signed at Houston, Texas, this **18th** day of **February, 2010**.

Nancy F. Atlas
United States District Judge